

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-1996

# Ryan Operations GP v. Santiam-Midwest

Precedential or Non-Precedential:

Docket 95-3250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Ryan Operations GP v. Santiam-Midwest" (1996). *1996 Decisions.* Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------
No. 95-3250
----------

RYAN OPERATIONS G.P., a Virginia General Partnership
and NVR, L.P., a Virginia Limited Partnership,
on behalf of its division, NVR BUILDING PRODUCTS CO.

v.

SANTIAM-MIDWEST LUMBER CO., an Oregon Corporation;
FURMAN LUMBER, INC., a Massachusetts Corporation;
BRIGHT WOOD CORP., an Oregon Corporation


BRIGHT WOOD CORP.,
                              Third Party Plaintiff

v.

FORREST PAINT CO., INC., an Oregon Corporation;
GUARDSMAN PRODUCTS, INC., a Delaware Corporation,
                              Third Party Defendants


                    Ryan Operations G.P. and NVR, L.P. and
                    its division, NVR Building Products Co.,
                    Appellants


----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 92-2480)

----------

Argued: December 4, 1995

BEFORE: SLOVITER, Chief Judge, STAPLETON
        and SAROKIN, Circuit Judges

----------

(Opinion filed April 15, 1995)

Robert B. Cave, Esq.
David G. Leitch, Esq. (ARGUED)

Hogan & Hartson
555 13th Street, N.W.
Washington, DC  20004-1109
Richard F. Rinaldo, Esq.
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA  15222

                    Attorneys for Appellants,
                    Ryan Operations G.P.;
                    NVR LP, and its division
                    NVR Building Products Co.


Stephen J. Poljak, Esq.
Anstandig, Levicoff, McDyer,
     Burdette & Yurcas
707 Grant Street
600 Gulf Tower
Pittsburgh, PA  15219

                    Attorney for Appellees,
                    Santiam-Midwest Lumber Co.


Louis C. Long, Esq.
Meyer, Darragh, Buckler,
     Beberick & Eck
2000 The Frick Building
Pittsburgh, PA  15219

                    Attorney for Appellees,
                    Furman Lumber Inc.


Louis C. Long, Esq.
Meyer, Darragh, Buckler,
     Beberick & Eck
2000 The Frick Building
Pittsburgh, PA  15219

Michael K. Atkinson, Esq.
Thomas M. Buchanan, Esq.
Michael L. Sibarium, Esq. (ARGUED)
Winston & Strawn
1400 L Street, N.W.
Washington, DC  20005

                    Attorneys for Third Party Plaintiff,
                    Bright Wood Corp.

Randy K. Hareza, Esq.
Burns, White & Hickton
120 Fifth Avenue
Suite 2400
Pittsburgh, PA  15222-3001

<div style="margin-left: 30%;">

Attorney for Third Party Defendant,
Forrest Paint Co. Inc.

</div>

Norbert F. Kugele, Esq.
Warner, Norcross & Judd
111 Lyon Street, N.W.
900 Old Kent Building
Grand Rapids, MI  49503

<div style="margin-left: 30%;">

Attorney for Third Party Defendant,
Guardsman Products Inc.

</div>

----------

OPINION OF THE COURT

----------

SAROKIN, <u>Circuit</u> <u>Judge</u>:

This case raises issues concerning the application and scope of the doctrine of judicial estoppel.  The district court, upon recommendation of a United States Magistrate Judge, granted summary judgment in favor of defendants on the theory that plaintiff, having failed to disclose its claims against defendants as a contingent asset in its Chapter 11 bankruptcy proceedings, was judicially estopped from seeking to recover on those claims.  For the reasons that follow, we will reverse.

**I.**

Ryan Operations, plaintiff in this matter[1], is in the business of constructing homes. This action arises out of a commercial dispute between Ryan and the manufacturer and suppliers of primed Fingerjointed Ponderosa Pine wood trim that Ryan purchased between January 1988 and June 1991 and used in the construction of several thousand new homes. Ryan purchased the wood trim from Santiam–Midwest Lumber Co. ("Santiam") from January 1988 to March 1990, and from Furman Lumber, Inc. from March 1990 to June 1991. The trim was manufactured by Bright Wood Corporation.

In July 1989, Ryan began receiving complaints from homeowners that the paint and underlying primer were peeling off the Ponderosa Pine trim on their new homes. Ryan informed Santiam of the problem, and Santiam suggested that Ryan switch to a different brand of primer. Ryan did so, but the problems continued and the complaints increased. As a result, Ryan instituted a consumer repair program in the fall of 1991, pursuant to which it has repainted and/or replaced the wood trim on hundreds of houses. Ryan is currently engaged in the costly process of replacing the trim on Ryan homes in several states.

In April 1992, Ryan filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In re NVR L.P., No. 92-

---

[1] Co-plaintiff in this matter is NVR, L.P., a limited partnership suing on behalf of its division NVR Building Products Company. Through a merger or series of mergers, a corporation entitled NVR, Inc. has become the successor in interest of NVR, L.P. and the parent corporation of NVR Homes, Inc. NVR Homes, Inc., also through a merger, has become the successor in interest of Ryan Operations. For simplicity's sake, we will refer to plaintiffs in this matter simply as "Ryan" or "plaintiff."

4

11704-T (Bankr. E.D. Va. Apr. 6, 1992).  The following month it filed its Schedule of Assets and Liabilities and Statement of Financial Affairs pursuant to Bankruptcy Code § 521.  Although the Code requires the debtor to disclose all claims and causes of actions as contingent assets, Ryan did not mention any potential claims that it might have from the allegedly defective Ponderosa Pine trim.

In June 1992, the bankruptcy court entered an order authorizing Ryan to retain counsel to represent Ryan in lawsuits by and against it in the ordinary course of business.  Among the "Routine Claims" that Ryan listed for the bankruptcy court were a class of "homeowners claims," nonspecifically defined as claims "by or against contractors or suppliers or relating to or arising out of the provision of services or material to the Debtors."  App. 189-90.  The court authorized Ryan to pursue and/or defend itself against such claims.

Subsequently, in December 1992, while the bankruptcy proceeding was still pending, Ryan filed suit in district court against Bright Wood, Santiam and Furman Lumber, alleging various breach of warranty claims arising out of the sale and manufacture of the Ponderosa Pine trim and seeking to recover the costs incurred in its consumer repair program.

In July 1993, without ever having been specifically informed of the pending lawsuit or the potential for recovery, the bankruptcy court confirmed Ryan's reorganization plan.  Ryan emerged from bankruptcy the following month.

5

In September 1994, defendant Bright Wood moved for summary judgment on judicial estoppel grounds, arguing that Ryan's failure to inform the bankruptcy court of its warranty claims against Bright Wood precluded Ryan from pursuing those claims in the district court.  Santiam, Furman, and the third-party defendants (who manufactured the primers used on the wood trim) joined in Bright Wood's motion.  Upon recommendation of a United States Magistrate Judge, the district court granted summary judgment against Ryan on March 21, 1995, on the ground of judicial estoppel alone.  From that ruling, Ryan appeals.

## II.

The district court had jurisdiction pursuant to 28 U.S.C. §1332(a)(1).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

We exercise plenary review over the district court's order granting summary judgment.  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.), cert. denied, 116 S. Ct. 165 (1995).

## IV.

Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding.  It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'"  Scarano v. Central R. Co. of New

<u>Jersey</u>, 203 F.2d 510, 513 (3d Cir. 1953)(citation omitted). "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p.782.

Ryan raises four issues regarding the scope and application of judicial estoppel for our review: (1) whether the district court erred in applying judicial estoppel at the request of one who was neither a party to the prior proceeding nor in privity with a party to that proceeding; (2) whether the district court erred in applying judicial estoppel because Ryan derived no benefit from its failure to disclose these potential claims in the bankruptcy proceedings; (3) whether the district court erred in concluding that Ryan's position in this lawsuit is inconsistent with a position it took in the bankruptcy proceedings; and (4) whether the application of judicial estoppel in this case is inconsistent with principles of equity and justice. We will examine each in turn.

## V.

Both parties agree that federal law should govern our disposition of this case, and we accept their agreement.[2] Having

_____

[2]Judge Sarokin, the author of this opinion, would not accept the agreement of the parties as to whether federal or state law governs in this case, because he believes that the question must be analyzed under the doctrine of <u>Erie Railroad v. Tompkins</u>, 304 U.S. 64 (1938), and that the parties cannot stipulate as to the applicable law as they might in a choice-of-law situation. The

7

following comments are the opinion of Judge Sarokin, not the court: It is well established that federal courts sitting in diversity must generally apply state substantive law and federal procedural law. Erie, 304 U.S. 64. This doctrine is rooted in the Constitution; the Supreme Court reasoned that "declar[ing] substantive rules of common law" in diversity cases is "'an unconstitutional assumption of powers by courts of the United States.'" Erie, 304 U.S. at 78, 79; see also Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 19 Federal Practice and Procedure § 4505. Because the question of whether federal or state law should govern issues of judicial estoppel in diversity cases is a question of the constitutional powers of the federal courts, we cannot simply accept the parties' recommendation that federal law governs without first ensuring that applying federal law would be constitutional under the circumstances. We can ensure that the application of federal law is constitutional in one of two ways: (1) by determining, as I would, that the Erie doctrine does not apply; or (2) by determining under Erie that the law of judicial estoppel is procedural rather than substantive in nature.

Although I believe that judicial estoppel is substantive in nature, I am persuaded by the reasoning of the Sixth Circuit in Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 n.4 (6th Cir. 1982), and the Fourth Circuit in Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n.4 (4th Cir. 1982), that Erie does not require us to apply state law. The Erie doctrine is not absolute; exceptions can be made where, as here, there are "affirmative countervailing considerations" that implicate "strong federal policy" considerations. Byrd v. Blue Ridge Rural Elec. Cooperative, Inc., 356 U.S. 525, 537–38 (1958); see also AFN, Inc. v. Schlott, Inc., 798 F. Supp. 219 (D.N.J. 1992). A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose. I would therefore conclude that a federal court sitting in diversity must apply federal law to questions regarding the doctrine of judicial estoppel.

There is an additional reason why I think it important to reach this matter. This court has never addressed this issue directly. While we have tended in the past to rely on federal law of judicial estoppel in diversity cases, we have occasionally applied state law or a combination of state and federal law. Compare Scarano, 203 F.2d 510 (applying federal law) with Linan–Faye Construction Co. v. Housing Auth. of Camden, 49 F.3d 915 (3d Cir. 1995)(applying New Jersey law) and with Gleason v. United States, 458 F.2d 171 (3d Cir. 1972)(applying both federal and state law). In some cases, there may be no relevant difference in terms of result between federal and state law of judicial estoppel. In other cases, however, the decision as to which law to apply may be dispositive of the outcome. As a result, I believe that we should take this opportunity to clarify the law

determined that federal law controls, we turn to the first issue presented for our review: whether the doctrine of judicial estoppel is available only to those who were parties or in privity with a party to the prior proceeding. Ryan argues that the doctrine as expounded in this circuit has a privity requirement which prevents its being enforced by "strangers to the earlier litigation." Appellant's Br. at 29. As it is undisputed that none of the defendants in the instant action was a party to the bankruptcy proceeding, Ryan contends that the district court erred in applying judicial estoppel for their benefit.

We first articulated the doctrine of judicial estoppel in the seminal case of <u>Scarano v. Central R. Co. of New Jersey</u>, 203 F.2d 510 (3d Cir. 1953). The plaintiff in that case, following a work-related injury, sought damages from his employer on the ground that he was completely incapacitated. After winning a damages award, he proceeded to sue his employer for reinstatement under the terms of a collective bargaining agreement. We concluded that plaintiff was estopped from seeking reinstatement, explaining our reasoning as follows:

> The 'estoppel' of which, for want of a more precise word, we here speak is but a particular limited application of what is sometimes said to be a general rule that "a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits."

---

of the circuit, especially since this issue has been properly briefed and presented to us.

9

<u>Id.</u> at 512-13.  We expressly declined to decide "[w]hether the correct doctrine is that broad," however; instead, we stated that the

> rule we apply here need be and is no broader than this. A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish <u>against the same adversary</u> a second claim inconsistent with his earlier contention.

<u>Id.</u> at 513 (emphasis added).

Ryan argues that the language underlined above indicates our intention to instill a privity requirement into our newly articulated doctrine of judicial estoppel.  The above excerpts make clear, however, that we did not hold that the doctrine was limited to circumstances in which a party asserted incompatible positions against the same adversary.  On the contrary, we explicitly stated that we so articulated the rule because the facts of the case did not require us to determine whether a broader rule might apply in other circumstances.

Ryan correctly points out that we have never applied the doctrine of judicial estoppel for the benefit of parties who were not involved in the prior judicial proceeding.  <u>See, e.g.</u> <u>Scarano</u>, 203 F.2d 510; <u>Oneida Motor Freight, Inc. v. United Jersey Bank</u>, 848 F.2d 414 (3d Cir.)(holding that plaintiff is judicially estopped from asserting position in post-bankruptcy proceeding against a bankruptcy creditor that is inconsistent with position asserted in prior bankruptcy proceeding), <u>cert. denied</u>, 488 U.S. 967 (1988); <u>Fleck v. KDI Sylvan Pools, Inc.</u>, 981

10

F.2d 107 (3d Cir. 1992)(holding that plaintiffs who promised bankruptcy court they would not seek recovery against debtor in excess of insurance coverage are judicially estopped from subsequently attempting to do so), cert. denied sub nom Doughboy Recreational, Inc., Div. of Hoffinger Indus., Inc. v. Fleck, 507 U.S. 1005 (1993); Delgrosso v. Spang & Co., 903 F.2d 234 (3d Cir. 1990).  However, we have never expressly limited the doctrine's applicability to situations in which a litigant asserts an inconsistent position against the same party or its privy.

The absence of an express rule notwithstanding, plaintiff argues that language in Gleason v. United States, 458 F.2d 171 (3d Cir. 1972), reveals that privity is required.  The plaintiff in that case filed a Workers' Compensation petition following his exposure to radioactive material in a work-related accident, alleging prospectively that he had suffered injury.  When injury from the radiation actually materialized four years later, plaintiff sued his employer for damages.  Although plaintiff testified in deposition that he had not actually experienced an injury at the time of the Workers' Compensation petition, the trial court dismissed the case on statute of limitations grounds, reasoning that plaintiff's Workers' Compensation petition indicated that he knew about the injury well within the limitations period.  On plaintiff's appeal, the employer argued that plaintiff should be judicially estopped from relying on deposition testimony which directly contradicted his Workers' Compensation petition.

11

In reaching our conclusion that judicial estoppel was inappropriate under the circumstances, we noted that the doctrine of judicial estoppel "has not always been applied, but has usually been applied where the same parties are involved and where one of the parties has changed his position or given something of value relying on the statement of his opponent." Id. at 175. Ryan now argues that this language evidences a rule that privity is required for the application of judicial estoppel. We disagree, for two reasons. First, we neither stated a rule in Gleason that these equitable characteristics were requirements for the application of judicial estoppel nor rested our decision on that basis. Rather, our decision rested on our conclusion that the plaintiff "did not play fast and loose with the courts or with the defendants." 458 F.2d 176. Second, although Gleason did not attempt to distinguish between equitable estoppel and judicial estoppel, we have since emphasized the importance of that distinction and more clearly articulated the border between the two doctrines. See Oneida, 848 F.2d at 419. Ryan cannot now extrapolate legal principles from any conflation of judicial and equitable estoppel that may have existed prior to our clarification of the distinction between the two.

In addition, we note that the purpose of the judicial-estoppel doctrine militates against the imposition of a privity requirement. Judicial estoppel "is intended to protect the courts rather than the litigants." Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121-22 (3d Cir. 1992). As we explained in Oneida,

12

> [j]udicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.

Oneida, 848 F.2d 414, 419 (3d Cir. 1988). Unlike equitable estoppel, therefore, judicial estoppel does not require that the party urging estoppel demonstrate that she believed or relied upon the plaintiff's prior inconsistent statement. Scarano, 203 F.2d at 512. While privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.

Our conclusion that privity is not required for the application of judicial estoppel accords with the majority view. See Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 214 (1st Cir. 1987)("harm to an opponent is not an invariable prerequisite to judicial estoppel"); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)("judicial estoppel may be applied even if detrimental reliance or privity does not exist"); Konstantinidis v. Chen, 626 F.2d 933, 937 (D.C. Cir. 1980)(same); Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 n.6 (8th Cir. 1987)(judicial estoppel does not require reliance or prejudice, because it seeks to protect the courts); Muellner v. Mars, Inc., 714 F. Supp. 351, 356 (N.D. Ill. 1989).

There are many instances in which the assertion of inconsistent positions can work to the advantage of a party but where there is no identity or relationship between those against whom the claim (or defense) is asserted. Where the contentions are mutually exclusive, it is irrelevant that they are asserted against diverse parties for the purposes of determining judicial

13

estoppel.  The integrity of the court is affronted by the inconsistency notwithstanding the lack of identity of those against whom it is asserted.

The defendants in this case thus were not barred from seeking judicial estoppel by the fact that they were not parties to Ryan's bankruptcy proceeding.

## VI.

We reach the same conclusion with respect to Ryan's related argument that "judicial estoppel should be applied only where the party resisting it benefited from the statement."  Appellant's Br. at 44.  Ryan contends that the district court erred in applying judicial estoppel in this case because, by Ryan's own estimation, Ryan did not benefit from its failure to disclose the instant claims in the bankruptcy court.

Putting aside for a moment the question of whether Ryan benefitted from its nondisclosure, we begin by determining whether as a general rule a party must have benefitted from her prior position in order to be judicially estopped from subsequently asserting an inconsistent one.  We readily conclude that the doctrine of judicial estoppel in this circuit contains no such requirement.[3]  We have noted on several occasions that "application of the doctrine of judicial estoppel is particularly

_____

[3]We note that the Sixth and Seventh Circuits have reached the opposite conclusion.  See Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982); Astor Chauffered Limousine Co. v. Runnfeldt Investment Corp., 910 F.2d 1540, 1548 (7th cir. 1990)("The offense is not taking inconsistent positions so much as it is winning, twice, on the basis of incompatible positions.").

14

appropriate in situations . . . where the party benefitted from its original position." Delgrosso v. Spang & Co., 903 F.2d 234, 242 (3d Cir.), cert. denied, 498 U.S. 967 (1990); Murray v. Silberstein, 882 F.2d 61 (3d Cir. 1989). In such cases, the tribunal has acted in reliance on the party's initial assertion, and thus the threat to the integrity of the judicial process from subsequent assertion of an incompatible position is more immediate.

Stating that benefit to the party from its prior position makes application of the doctrine "particularly appropriate," however, is not the equivalent of stating that such benefit is a necessary precondition to application of the doctrine. As we stated in Lewandowski v. National Railroad Passenger Corp. (Amtrak), 882 F.2d 815 (3d Cir. 1989), "the critical issue is what the [party] contended in the underlying proceeding, rather than what the jury found." Id. at 819. Whether the party sought to be estopped benefitted from its earlier position or was motivated to seek such a benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel.

## VII.

As judicial estoppel is intended to prevent parties from playing fast and loose with the courts by asserting inconsistent positions, any application of the doctrine must rest upon a finding that the party against whom estoppel is sought asserted a position inconsistent with one she previously asserted in a

15

judicial proceeding.  The third issue that Ryan raises on appeal is whether Ryan has in fact asserted inconsistent positions within the meaning of the judicial-estoppel doctrine.  This entails a two-part inquiry: (1) is Ryan's present position inconsistent with a position it asserted in its Chapter 11 proceedings; and (2) if so, did Ryan assert either or both of the inconsistent positions in bad faith--i.e., with intent to play fast and loose with the court.  Only if both prongs are satisfied is judicial estoppel an appropriate remedy.

The district court found that Ryan's failure to list its potential claims arising from the Ponderosa Pine trim on its schedule of assets in the Chapter 11 proceeding constituted a statement that Ryan had no such claim, which the current lawsuit contradicts.  Ryan contends that its present claims are not inconsistent with any position it took in the bankruptcy proceeding because it neither affirmatively represented that it had no claim against defendants arising from the Ponderosa Pine Trim situation nor misled the court with regard to the existence and/or prosecution of those claims.

**A.**

As a preliminary matter, we will set forth the disclosure requirements of the United States Bankruptcy Code in order to place Ryan's alleged prior inconsistent statement in context. The Code imposes on debtors an affirmative duty of full disclosure. Section 521 requires the debtor to file with the court "a schedule of assets and liabilities . . . and a statement of the debtor's financial affairs."  11 U.S.C. § 521(1).  The schedule

16

must disclose, inter alia, "contingent and unliquidated claims of every nature" and provide an estimated value for each one. Official Forms, Schedule B, App. 41.

Once the bankruptcy proceeding is underway, the debtor may not solicit approval of a plan of reorganization from a claim-holder unless "at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11

U.S.C. § 1125(b). Adequate information is defined as
     information of a kind, and in sufficient detail, as far
     as is reasonably practicable in light of the nature and
     history of the debtor and the condition of the debtor's
     books and records, that would enable a hypothetical
     reasonable investor typical of holders of claims or
     interests of the relevant class to make an informed
     judgment about the plan . . . .

11 U.S.C. § 1125(a).

These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated. See Oneida, 848 F.2d at 417-18.

**B.**

It is undisputed that by failing to list its claims against defendants on its § 521 schedule of assets, Ryan violated these statutory duties of full disclosure. However, this court has expressly left open the question of whether such nondisclosure,

17

standing alone, can support a finding that a plaintiff has asserted inconsistent positions within the meaning of the judicial-estoppel doctrine. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988)("[W]e stop short of finding that . . . [plaintiff's] prior silence is equivalent to an acknowledgment that it did not have a claim against the bank.").[4]   We need not decide this issue here, and we decline to do so, because we conclude that judicial estoppel would be inappropriate in any event as there is no evidence that Ryan acted in bad faith.

Asserting inconsistent positions does not trigger the application of judicial estoppel unless "intentional self-contradiction is . . . used as a means of obtaining unfair advantage." Scarano, 203 F.2d at 513.  Thus, the doctrine of

---

[4]In that case, as here, the plaintiff sought to pursue claims that it had failed to disclose on its § 521 schedule of assets in a prior bankruptcy proceeding.  Unlike Ryan, however, the plaintiff in Oneida had not only failed to disclose its potential claim against a bank for $7.7 million as a contingent asset on its § 521 schedule of assets and liabilities, but simultaneously claimed the corresponding $7.7 million debt to the bank as a liability on the same schedule.  Because the plaintiff had claimed the debt in the bankruptcy proceeding without disclosing the potential offset, we found that the plaintiff's "current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed." Id.  As a result, we concluded that judicial estoppel was appropriate under the circumstances, because "Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect." Id.
    In this case, Ryan did not treat the homeowners' claims arising from the Ponderosa Pine trim debacle as undisputed; in fact, it did not specifically mention those claims at all.  As a result, Oneida does not compel a conclusion that Ryan's subsequent assertion of those claims was inconsistent with its Chapter 11 treatment of them.

judicial estoppel does not apply "when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court."  Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980).  An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing.  See Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993); see also Total Petroleum, Inc. v. Davis, 822 F.2d 734 (8th Cir. 1987)(holding that the doctrine only applies to deliberate inconsistencies that are "tantamount to a knowing misrepresentation to or even fraud on the court.").

Defendants contend that in a bankruptcy proceeding, a debtor's failure to satisfy its statutory duty of full disclosure gives rise to an inference of bad faith sufficient to satisfy the requirements of the judicial-estoppel doctrine.  They rely for support on our decision in Oneida, in which we applied judicial estoppel without an express finding of intentional misconduct. In reaching our conclusion that plaintiff's failure to list its claims as assets in the underlying Chapter 11 proceeding precluded it from asserting them in a post-bankruptcy proceeding, we stated that "Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the judicial system which the doctrine of judicial estoppel seeks to protect."  848 F.2d at 419.

While we did not expressly analyze plaintiff's intent in Oneida, we did not discard that analysis entirely in light of plaintiff's affirmative duty of full disclosure under the Bankruptcy Code.  On the contrary, there was ample evidence in

19

the record from which an inference of deliberate manipulation could be drawn. Oneida had listed its $7.7 million debt to the bank on its schedule of liabilities without mentioning the possibility of an offset. As a result, the creditors as a whole had a skewed sense of Oneida's financial condition and no knowledge of a claim that could inure to their benefit. Whereas the creditors may have been entitled to the full amount of any recovery had they known about the claim in advance, the reorganization plan that they approved without knowledge of the claim limited their potential recovery to one-third of the debtor's gross recovery. 848 F.2d at 416 n.1. In addition, had the bank known that Oneida would subsequently seek restitution of the amount paid under the plan, it might well have voted against approval of the plan. 848 F.2d at 418. It is therefore clear that Oneida had ample motive to conceal its claim. Moreover, as the gravamen of Oneida's case against the bank was that the bank's actions were responsible for forcing Oneida into bankruptcy, it is clear that Oneida had knowledge of this potential claim at the time it filed for bankruptcy. This combination of knowledge of the claim and motive for concealment in the face of an affirmative duty to disclose gave rise to an inference of intent sufficient to satisfy the requirements of judicial estoppel.

In contrast to Oneida, there is no basis in this case for inferring that Ryan deliberately asserted inconsistent positions in order to gain advantage--i.e., that it played fast and loose with the courts. There is no evidence that the nondisclosure

20

played any role in the confirmation of the plan or that disclosure of the potential claims would have led to a different result. Although it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage, the undisputed facts weigh against such an inference in this case. First, Ryan's failure to list the instant claims as contingent assets was offset by its failure to list the corresponding claims of homeowners against Ryan resulting from the allegedly defective wood trim as liabilities. As a result, the balance of assets and liabilities before the court and creditors when the reorganization plan was approved may have been unaffected by the failure to list the claims as assets. Compare Oneida, 848 F.2d at 418 (finding debtor who listed amount owed to creditor as a liability in bankruptcy proceeding without any mention of possible offset judicially estopped from pursuing post-bankruptcy claim against that creditor). Second, pursuant to the reorganization plan, creditors will receive 91 percent of any future recovery on the Ponderosa Pine Trim claims, and will suffer 91 percent of the loss if Ryan is unable to recover the expenses incurred in the repair and replacement program from defendants. Affidavit of Bruce W. Gilchrist, App. 191-92. Thus, it appears that Ryan derived and intended no appreciable benefit from its nondisclosure. Compare Payless Wholesale Distributors, Inc. v. Culver, 989 F.2d 570, 571 (1st Cir.)(applying judicial estoppel upon finding that plaintiff intended to "[c]onceal [its] claims [in bankruptcy proceeding]; get rid of [its] creditors on the

21

cheap; and start over with a bundle of rights"), <u>cert.</u> <u>denied</u>, 114 S. Ct. 344 (1993).

Nor do Ryan's actions subsequent to the filing of its § 521 schedule support a finding that it sought to conceal the claims deliberately. In an order modifying the automatic stay to allow for litigation of "routine claims," the bankruptcy court specifically authorized Ryan to pursue "(i) homeowner claims, including, but not limited to, warranty claims, . . . [and] (ii) claims by or against contractors or suppliers or relating to or arising out of the provision of services or materials to the Debtors . . . ." Order (i) Modifying the Automatic Stay to Allow Litigation of Routine Claims to Proceed, (ii) Authorizing Debtors to Settle Routine Claims, and (iii) Authorizing Debtors to Pay Settlement Amounts or Judgments of $15,000 or Less Relating to Routine Claims, July 1, 1992, App. 218-19. Upon receipt of this authorization, Ryan filed the instant action during the pendency of the bankruptcy proceedings, albeit in a different jurisdiction. Ryan then submitted fee requests to the bankruptcy court detailing, among other things, counsel's work in the Ponderosa Pine Trim litigation, which the bankruptcy court reviewed and approved for payment. App. 231-40. Finally, the reorganization plan that the court and creditors approved authorized Ryan to retain and enforce claims against any entity and to adjudicate homeowner claims. Second Amended Joint Plan of Reorganization, §§ 4.09 & 7.02, App. 86 & 92. While none of these facts standing alone is sufficient to substitute for disclosure under § 521, in combination they preclude a finding

22

that Ryan deliberately concealed its claims against defendants from the bankruptcy court or otherwise sought to "obtain . . . unfair advantage." Scarano, 203 F.2d at 513.[5]

We note in addition that while plaintiff cites district court decisions from various jurisdictions that support its position,[6] defendant cites no case in which a court held that intent to mislead or deceive could be inferred from the mere fact of nondisclosure, and we are aware of none. We are persuaded, however, that policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be

---

[5] Defendants cite several district court cases from other jurisdictions in support of their position that a debtor's failure to disclose a claim as an asset in bankruptcy precludes later assertion of that claim under the doctrine of judicial estoppel. See Pako Corp. v. Citytrust, 109 B.R. 368 (D. Minn. 1989); In re Hoffman, 99 B.R. 929 (N.D. Iowa 1989); In re Louden, 106 B.R. 109 (E.D. Ky. 1989); In re Galerie des Monnaies, 62 B.R. 224 (S.D.N.Y. 1986), aff'd, 1986 WL 6230 (S.D.N.Y. 1986); In re Caro Area Services for the Handicapped, 53 B.R. 438 (E.D. Mi. 1985). Several of these cases are clearly distinguishable from the instant case. See, e.g., Pako, 109 B.R. at 377 (finding that debtor knowingly concealed claim in light of pre-bankruptcy testimony of General Counsel/Chief Administrative Officer that he thought debtor had been wronged by defendant). To the extent that some are not, we note simply that these cases are not binding on this court, and we are not persuaded by their analysis.

[6] See Guenther v. Snap-On Tools Corp., 1995 WL 137061, *11 (N.D. Ill. 1995)(unreported decision)(holding that judicial estoppel on the basis of bankruptcy nondisclosure is inappropriate because "there is no basis for finding any misconduct or injustice"); In re TGX Corp., 168 B.R. 122, 132 (W.D. La. 1994)(finding nondisclosures "not sufficiently egregious" to justify judicial estoppel); Reciprocal Merchandising Services, Inc. v. All Advertising Associates, Inc., 163 B.R. 689, 697 n.11 (S.D.N.Y. 1994)(finding that "intentional misconduct is a necessary element in a claim for judicial estoppel" even in bankruptcy context); In re Neptune World Wide Moving, Inc., 111 B.R. 457 (S.D.N.Y. 1990)(stating that judicial estoppel does not apply where inconsistency was based on inadvertence or mistake).

23

inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the "strong medicine" of judicial estoppel. Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993).

Defendants argue that rejecting their proposed "inferred intent" rule "would invite prolonged discovery into the motives of the debtor." Bright Wood's Br. at 25. We disagree. For purposes of judicial estoppel, we require a showing of intent in other contexts; we see no reason why the process of discerning that intent should be unworkable in the bankruptcy context when it is workable elsewhere. We therefore reject defendant's argument that intent may be inferred for purposes of judicial estoppel solely from nondisclosure notwithstanding the affirmative disclosure requirement of the Bankruptcy Code.

Because Ryan did not act with the intent to play fast and loose with the courts that is required for application of the judicial-estoppel doctrine, we conclude that the district court erred in granting summary judgment against Ryan on judicial estoppel grounds.

**VIII.**

24

As we have already concluded that the district court erred in granting summary judgment against Ryan on judicial estoppel grounds, we need not reach Ryan's argument that application of judicial estoppel under the circumstances of this case would violate principles of equity and justice. We nonetheless state briefly our belief that judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Oneida, 848 F.2d at 424 (Stapleton, J., dissenting). It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to "secure substantial equity." Gleason, 458 F.2d at 175. In this case, application of judicial estoppel would be unduly harsh and inequitable. While we need not and do not decide whether we would reverse the district court's order on this ground alone, our equitable concerns lend support to our overall conclusion.

## IX.

For the foregoing reasons, we will reverse the order of the district court granting summary judgment in favor of defendants and remand for further proceedings.