**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1732
_____

TAMMY RIZZOLO DANISE,
Appellant

v.

SAXON MORTGAGE SERVICES INC;
OCWEN LOAN SERVICING
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-06062)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 8, 2018
_____

Before: McKEE, AMBRO, and RESTREPO, Circuit Judges

(Filed: June 7, 2018)
_____

OPINION[*]
_____

RESTREPO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Tammy Danise appeals an order of the District Court dismissing her suit against Saxon Mortgage Services, Inc. ("Saxon") and Ocwen Loan Servicing, LLC ("Ocwen") for breach of contract and related causes of action. Because the District Court properly invoked the doctrine of judicial estoppel, we will affirm.

**I**

As we write solely for the benefit of the parties, we set out only the facts necessary for the discussion that follows. Danise purchased a home in East Hanover, New Jersey with an interest-only adjustable rate mortgage loan in the amount of $600,000 in July 2006. Two years later she contacted her loan servicer, Saxon, for assistance in reducing her monthly payment. Saxon denied her first application for a loan modification in October 2008 and Danise continued to struggle with her mortgage payments, missing a payment in February 2009, and several more thereafter.

In April 2009, Saxon and Ocwen each executed a Servicer Participation Agreement with the U.S. Treasury, which committed them to participate in the Treasury's Home Affordable Modification Program ("HAMP").[1] Saxon contacted Danise and offered her a HAMP Trial Period Plan ("TPP") in May 2009. Danise completed the requested paperwork, which temporarily reduced her monthly mortgage payments beginning June 1, 2009. On April 6, 2010, Saxon denied Danise a permanent loan modification pursuant to HAMP. In support of its denial, Saxon advised Danise that her loan had failed a Net Present Value calculation, which Danise alleges was not a

---

[1] During the Chapter 13 proceedings, Ocwen purchased Saxon's assets and began servicing Danise's loan around April 2012.

ground for denial under the TPP. Although Saxon invited Danise to apply for alternative loan modification options, it continually denied Danise a permanent modification.

Ultimately, Danise was unable to make her monthly mortgage payments and, after Saxon served her with a foreclosure complaint in September 2010, she filed for Chapter 13 bankruptcy protection. Saxon filed a proof of claim based on the original, unmodified mortgage seeking pre-petition mortgage arrears and the monthly mortgage payment contemplated by the original loan agreement. Danise's bankruptcy petition's Schedule of Assets and Liabilities did not include any mention of potential claims against Saxon. After her completion of the Chapter 13 Plan, the Bankruptcy Court issued Danise an Order of Discharge in March 2015. Because her obligations to creditors exceeded her scheduled assets, a significant portion of her secured and unsecured debts, including a second mortgage, were discharged.

Approximately three months later, Danise filed suit in the Superior Court of New Jersey against Saxon and Ocwen. Ocwen removed the case to federal court. Danise asserts claims against both parties for breach of contract and related causes of action in connection with Saxon's denial of a permanent loan modification pursuant to the HAMP. The District Court granted Defendants' motion to dismiss pursuant to Rule 12(b)(6) on the grounds of judicial estoppel. Danise moved for reconsideration, which the District Court denied. Danise timely appealed both orders.

**II**[2]

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(d), and we have appellate jurisdiction under 28 U.S.C. § 1291.

3

As the doctrine of judicial estoppel is "always factually driven," this Court reviews a district court's application of judicial estoppel for abuse of discretion. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996). We exercise plenary review over a district court's dismissal of claims pursuant to Rule 12(b)(6). *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009). "We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in [Danise's] favor." *Id*. "The District Court's judgment is proper only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." *Id*.

We review a district court's denial of a motion for reconsideration for abuse of discretion. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999)

## A

"The [Bankruptcy] Code imposes on debtors an affirmative duty of full disclosure." *Ryan Operations G.P. v. Forrest Paint Co., Inc.,* 81 F.3d 355, 362 (3d Cir. 1996). The debtor's schedule of assets and liabilities "must disclose, *inter alia*, 'contingent and unliquidated claims of every nature' and provide an estimated value for each one." *Id*. (citation omitted). This disclosure obligation is "crucial to the effective functioning of the federal bankruptcy system," as "creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan." *Id.* The debtor's duty to disclose is continuous throughout

4

the course of a bankruptcy proceeding. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004).

**B**

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine" that bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency. *Ryan Operations G.P.*, 81 F.3d at 358. "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'" *Id.* (quoting *Scarano v. Cent. R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953)). "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (citation omitted). It frequently arises in the context of a failure to schedule a claim as an asset in a bankruptcy, and the inconsistent pursuit of the undisclosed claim. *See*, *e.g.*, *id.*; *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988).

"Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001).

## III

Danise argues that the District Court abused its discretion by invoking judicial estoppel. We disagree.

## A

We begin with the first prong of the framework: whether Danise has asserted irreconcilably inconsistent positions. Danise's claim is based upon events that occurred before she filed for bankruptcy. Yet when prompted to disclose "contingent and unliquidated claims of every nature," "counterclaims of the debtor, and rights to setoff claims," or any other claims on her Schedule of Assets and Liabilities, Danise listed "none." App. 86. Nor did she object to Saxon's claim to her mortgage or challenge the validity of the original loan documents at any time during the bankruptcy proceedings. Danise's position during the entirety of the bankruptcy proceedings, when she failed to either object to Saxon's claim or schedule any claim against Saxon, is inconsistent with her position in the lawsuit before us, filed three months after she received an order of discharge.

In the second prong of the framework, we consider whether Danise changed her position in bad faith. "[T]he doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as a part of a scheme to mislead the court.'" *Ryan Operations G.P.*, 81 F.3d at 362. However, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative

duty to disclose." *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321(3d Cir. 2003).

If a debtor has enough information prior to confirmation of her bankruptcy plan to suggest that a possible claim exists, then it is a "known" claim that must be disclosed in the bankruptcy petition. *Id.* at 323. Here, the sequence of events Danise presents belies her denial of knowledge. In the words of the District Court, Danise "would have the Court believe that: (1) throughout the roughly five-year period between Defendants' denial of her loan modification requests and the satisfaction of her bankruptcy plan, Danise was unaware that she may have a cause of action against Defendants, and; (2) during the three-month period following the bankruptcy court's Order of Discharge, she suddenly became apprised that she may have a basis to assert claims against Defendants." App. 15. Danise has failed to explain how she learned of the possible causes of action she asserts against Defendants only after she received the Order of Discharge. We are persuaded further of Danise's constructive knowledge of the claim by her representation in both the bankruptcy proceedings and this case by at least one of the same attorneys.

A motive to conceal is apparent from the damages that Danise seeks. If disclosed during the bankruptcy proceedings, the claim may have affected the size of the bankruptcy estate, to the benefit of Danise's creditors and to her financial detriment. Because there was "evidence in the record from which an inference of deliberate manipulation could be drawn," contravening Danise's assertion that she lacked knowledge, the District Court did not abuse its discretion in finding the second prong of the framework satisfied. *Ryan Operations G.P.*, 81 F.3d at 363.

7

Lastly, before a court may apply the doctrine of judicial estoppel, it must determine whether any lesser sanction is available. *Montrose Med. Grp. Participating Sav. Plan*, 243 F.3d at 779-80. Permitting Danise to seek damages would potentially confer upon her an unfair advantage over her creditors, who did not receive the full value of their debts, and "reward [her] for what appears to be duplicitous conduct in the course of [her] bankruptcy proceeding." *Krystal Cadillac-Oldsmobile GMC Truck, Inc.*, 337 F.3d at 325. Recovery of damages "would send a message that 'a debtor should consider disclosing potential assets only if he is caught concealing them.'" *Id*. (citation omitted). In short, no lesser sanction is available. The District Court did not abuse its discretion in its application of judicial estoppel.

**B**

Danise also appeals the District Court's denial of her Motion for Reconsideration. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion [to dismiss]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe*, 176 F.3d at 677. As Danise is unable to show any manifest errors of law or fact in the District Court's decision or present any new evidence, the District Court did not abuse its discretion in denying her motion for reconsideration.

8

**IV**

For the foregoing reasons, we will affirm the judgment of the District Court.