**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6004-17T2

PETER HILAL and DI HILAL,

     Plaintiffs-Respondents,

v.

DONGYOUN HAN,

     Defendant-Appellant.

_____

Submitted June 5, 2019 – Decided August 2, 2019

Before Judges Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-018059-17.

Sobel Han & Cannon, LLP, attorneys for appellant (Gregory J. Cannon, on the brief).

Jeffrey L. Clutterbuck, attorney for respondent.

PER CURIAM

Plaintiffs Peter Hilal and Di Hilal (tenants),[1] tenants in a condominium unit owned by defendant Dongyoun Han (landlord), filed an action seeking double-damages and attorneys' fees and costs pursuant to N.J.S.A. 46:8-21.1, after landlord retained tenants' security deposit which he contended was owed for late fees and holdover rent for one day. Landlord appeals from a judgment for tenants in the amount of $2643.28 plus costs entered after a bench trial, which judgment was later amended to include $3900 in counsel fees and established costs of $107 for a total judgment of $6543.28. Landlord argues the trial court erred by ruling he waived the late fees; and by applying preclusion doctrines: judicial estoppel and the entire controversy doctrine. We agree the trial court erred in determining landlord was not entitled to accrued late fees and reverse that part of the judgment; we affirm the trial court's ruling that landlord had no basis to withhold the holdover rent.

The lease agreement entered into by the parties required tenants to pay monthly rent in advance on the first day of every month for the two-year term that ended on February 28, 2017. If rent was not paid by the close of business on the fifth day of each month, tenants were required to pay a $100 late fee.

---

[1]  We refer to Peter Hilal by his given name when we discuss his individual actions so as to distinguish him from Di Hilal; we mean no disrespect or familiarity by our practice.

Tenants paid $5500 as a security deposit that was intended, in part, "to reimburse [l]andlord for unpaid [r]ent or [a]dditional [r]ent"; additional rent explicitly included late fees.

After landlord advised tenants of his intention to personally occupy the unit at the end of the lease term, and tenants informed landlord of their intention to exercise an option to renew the lease, landlord served tenants with a notice to quit in October 2016. He filed a complaint for possession of the unit in January 2017, see N.J.S.A. 2A:18-61.1(l)(3),[2] but withdrew it because the October 2016 notice to quit did not comply with N.J.S.A. 2A:18-61.2(f).[3]

Landlord served another notice to quit on January 25, 2017. Tenants did not vacate the premises maintaining they exercised their option to renew. Landlord filed a second complaint for possession, in April 2017, again seeking to personally occupy the unit. Both parties agree the trial court which heard that

---

[2] One of the statutory grounds for good-cause removal of a tenant is that "[t]he owner of a building of three residential units or less seeks to personally occupy a unit." N.J.S.A. 2A:18-61.1(l)(3).

[3] Notice for an action seeking possession under N.J.S.A. 2A:18-61.1(l)(3) must be sent two months "prior to the institution of the action and, provided that where there is a written lease in effect no action shall be instituted until the lease expires." N.J.S.A. 2A:18-61.2(f).

case ruled tenants did not have an option to renew but dismissed the case without prejudice.[4]

Landlord served a third notice to quit in June 2017 requiring tenants to vacate the unit by August 31, 2017.

Although landlord contends tenants did not vacate the premises until September 1, 2017, thus justifying his withholding of one day's rent, the trial court found he was notified that tenants vacated on August 31 and that the keys and fobs for the unit could be picked up at the front desk. The court noted landlord testified "he was too busy to pick them up on" August 31 and determined "there was no basis for his claim for one extra day."

We defer to the trial court's bench trial findings and conclusions of fact based on its ability to perceive witnesses and assess credibility. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the

---

[4] We were not provided with any record of this or any other proceeding pertaining to the April 2017 complaint except for a copy of the eCourts System case jacket that reflects the dismissal without prejudice on June 20, 2017 but provides no explanation.

A-6004-17T2

evidence," Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence. . . ." In re Tr. Created by Agreement Dated December 20, 1961 ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms, 65 N.J. at 484). We review the trial court's interpretation of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Given our standard of review, we agree the trial court correctly entered judgment against landlord for the amount of one day's rent.

We do not agree, however, with the trial court's conclusion that "there are so many legal doctrines that contradict [landlord's] claim[]" to late fees for October and November 2015; January, April, May, July, October and December 2016; February, May, June and July 2017, based on tenants' rent-payment envelopes that were postmarked on or after the fifth of each month.

Contrary to tenants' claim in their merits brief that the trial court correctly concluded landlord's "acceptance of [their] rent checks waived all alleged past breaches of their continuing obligation promptly to pay rent," the trial court

5

misconstrued the evidence and ignored the plain terms of the lease agreement. The court found from Peter Hilal's testimony that landlord never raised the issue of late payments and "in fact, from the outset [landlord] was perfectly happy starting in October 2015 to receiv[e] the rent as long as it was postmarked by the [fifth] of the month as evidenced by J-10, when [landlord] actually e-mailed [Peter] saying[,] 'check received yesterday, postmarked 10/5, no worries, [on] reissuing it.'"

The evidence is a series of emails between Peter and landlord that commenced on October 7, 2015, when landlord asked if Peter sent the check to landlord's "new address" which differed from that provided in the lease agreement. That same day, Peter confirmed "Di mailed it to that address last week." Landlord responded that day: "OK. Let's give it until the end of the week to see if it trickles in. I know some other stuff that was sent from others in mid-Sept[ember] never made it." Peter concluded the day's messaging, advising landlord, "Let me know if you want me to re-issue." Two days later, landlord emailed Peter, "Check received yesterday postmarked 10/5. No worries on re-issuing." After Peter responded that "Di [said] she put it in the outbound mail[box]" on Saturday, October 3 and did not know why it was postmarked on

the fifth, landlord responded, "No worries.  Gov[ernment has] never been known to be speedy."

The trial court's conclusion that landlord acted in bad faith and accepted subsequent rent checks, thereby waiving his right to collect same ignored the non-waiver provision in the lease agreement which we interpret de novo, see Manalapan Realty, 140 N.J. at 378; we give "contractual terms 'their plain and ordinary meaning,'" Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)).  Paragraph 30 of the lease provides:

> Failure of the Landlord to insist upon the strict performance of the terms, promises, agreements and conditions shall not waive or relinquish the Landlord's rights thereafter to enforce any such terms, promises, or conditions.
>
> If at any time Tenant makes a payment to Landlord for any amount which is smaller tha[n] the full amount due and owing to Landlord, Landlord's acceptance of this smaller amount shall not be considered a settlement or satisfaction of the full amount due.  In these circumstances, Landlord shall be considered to have accepted the partial payment without prejudice and subject to the Landlord's right to collect the balance and to exercise any and all other rights available to Landlord under this Lease and by law.  Landlord's additional rights shall include the right to collect from Tenant all attorneys' fees and other expenses incurred by the Landlord in enforcing any of the obligations of the Tenant or rights of the Landlord

A-6004-17T2

under this Lease. These costs are due and collectible as Additional Rent.

The plain language of the non-waiver clause allowed landlord to accept the late payments and reserve unto himself the right to collect late fees. We also note paragraph 4 of the agreement, providing for rental payments, reads: "Landlord does not lose the right to any remedy by accepting either full or partial payment of rent . . . ." We are unpersuaded by tenants' tortured interpretation of the non-waiver paragraph, contending in their merits brief that the second paragraph is "inoperative" because no amount was "due and owing" since landlord failed to claim non-payment as a ground for eviction in the first two suits he filed. Nor do we find apposite or binding Burstein v. Liberty Bell Village, 120 N.J. Super. 54 (Cty. Ct. 1972), relied upon by tenants and the trial court.

A waiver requires "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on [its] part." W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152 (1958) (quoting Aron v. Rialto Realty Co., 100 N.J. Eq. 513, 517 (Ch. 1927), aff'd, 102 N.J. Eq. 331 (E. & A. 1928)). Waiver is "a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." Allstate Ins. Co. v.

Howard Sav. Inst., 127 N.J. Super. 479, 488 (Ch. Div. 1974) (quoting George F. Malcolm, Inc. v. Burlington City Loan & Tr. Co., 115 N.J. Eq. 227, 232 (Ch. 1934)). A party waives its right to enforce a contract provision if it consistently acts in such a way as to indicate that it does not intend to hold the other contracting party to that provision. See Schlegel v. Bott, 93 N.J. Eq. 607, 610 (E. & A. 1922). Landlord's single act of allowing tenants to submit a late payment following landlord's change of address, especially in light of Peter's representation that the check was mailed on the third of the month, did not abrogate the non-waiver clause or otherwise amount to landlord's waiver of his contractual right to collect late fees.

The court also found landlord failed to provide tenants with "appropriate notice of the non-payment" pursuant to paragraph 26 of the lease agreement. But that paragraph specifies what notices must be provided if landlord institutes any action to evict tenants.

Our determination that landlord was not required to provide notice of late payments to tenants and that landlord did not waive his rights to late fees renders tenants' argument that landlord was equitably estopped from collecting late fees because he concealed his intent to assert his right to same without sufficient

merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).[5] So too, tenants' argument that landlord's unclean hands preclude him from collecting late fees is without merit. The trial court's ruling that landlord's actions were a retaliatory reaction to the disputes between the parties during the tenancy ignored the lease agreement terms that support landlord's fee-collection actions; landlord had a legal right under the agreement to collect those fees.

In determining landlord was precluded from asserting a claim for late fees, the trial court found that landlord "went to court twice" to evict tenants but "never claimed non-payment in his previous claims where he was required to do so and certify that no evidence was being claimed for non-payment of rent." The court, finding preclusion under judicial estoppel and the entire controversy doctrine, continued, "Here, it was clear that if such a valid claim for late fees was here and present that that would have been a grounds and that it should have been joined in the eviction proceeding that [was] commenced by [landlord]."

Neither of those two preclusion doctrines is applicable in this case. Landlord brought two prior summary actions based on his desire to regain possession of the unit for his personal use, N.J.S.A. 2A:18-61.1(l)(3); only that

---

[5] Tenants did not present an equitable estoppel argument to the trial court – only a general estoppel argument – and the trial court did not make any findings or conclusions regarding equitable estoppel.

ground was alleged in both prior complaints. We have long recognized "[t]he Summary Dispossess Act was designed to enable the landlord to obtain speedy recovery of the premises." Fargo Realty, Inc., v. Harris, 173 N.J. Super. 262, 267 (App. Div. 1980). Judge King recognized New Jersey's general policy to discourage multiple lawsuits, but observed "summary dispossess actions are not like other lawsuits" because the sole underlying purpose of such actions is to allow the landlord speedy recovery. C.F. Seabrook Co., v. Beck, 174 N.J. Super. 577, 589 (App. Div. 1980).

In that the summary proceeding's sole aim is to provide possession to a lawfully entitled landlord, we agree with the commentary offered by Raymond I. Korona in his treatise, that even when summary possession is granted based on non-payment of rent, "a judgment for possession is not conclusive as to the amount of rent due by the tenant to the landlord, in a subsequent action instituted by the landlord against the tenant in the same court for the recovery of rent for the same premises." 23A N.J. Practice, Landlord and Tenant Law § 43.2, at 219 (Raymond I. Korona) (5th ed. 2001).

Thus the entire controversy doctrine, designed to yoke all transactional claims, Olds v. Donnelly, 150 N.J. 424, 431 (1997), is not applicable to summary possession actions. "The goals of the doctrine are to promote judicial efficiency,

11

assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy. Ibid.

Those goals would not be fostered by requiring successive suits to recover each of the monthly late fees or to recover late fees that accrued after landlord filed an action for possession while tenant remained in the unit, see Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995) (holding the "doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action"). Inasmuch as the trial court misapplied the doctrine to award tenants double the amount of retained late fees, we determine the court abused its discretion. Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960).

Likewise, we do we perceive that judicial estoppel – "designed to prevent litigants from 'playing fast and loose with the courts,'" Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)) – applies to summary possession actions which are designed to play fast in the courts. Further, this is not the case like those in which the doctrine most commonly applies when a party takes inconsistent positions in different legal actions, id. at 385, and the party succeeds in maintaining one of those positions, id. at 386.

A-6004-17T2

This is not the case where "a court has based a final decision, even in part, on a party's assertion, [and] that same party is thereafter precluded from asserting a contradictory position." Id. at 387-88. Our Supreme Court explained the salutary policy considerations underpinning the application of the doctrine:

> [W]here a party has prevailed on a litigated point, principles of judicial estoppel demand that such party be bound by its earlier representations. See McCurrie v. Town of Kearny, 174 N.J. 523, 533 (2002) (concluding that "judicial estoppel precludes a party from taking a position contrary to the position he has already successfully espoused in the same or prior litigation"[).]
>
> [Guido v. Duane Morris LLP, 202 N.J. 79, 94-95 (2010).]

The trial court departed from these established policies and thus abused its discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). Neither of landlord's previous cases was adjudicated. Landlord did not take any position on which he prevailed. This is not one of those limited circumstances where the extraordinary remedy of judicial estoppel should be invoked. In re Declaratory Judgment Actions filed by Various Municipalities, Cty. of Ocean, 446 N.J. Super. 259, 292 (2016), aff'd as modified, 227 N.J. 508 (2017).

We vacate that portion of the judgment against landlord that was based on the late fees. We are also constrained to vacate the award of attorneys' fees.

Although the decision to grant attorneys' fees pursuant to the Security Deposit Act, N.J.S.A. 46:8-19 to -26, lies within the discretion of the trial judge, see N.J.S.A. 46:8-21.1(c), and a counsel fee decision "will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion," Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), nothing in the record establishes that the court expressed any reason for its award to tenants – a clear abuse of discretion, United States v. Scurry, 193 N.J. 492, 504 (2008). On remand, after the trial court enters a revised judgment reflecting only the award to tenants for one day's rent, the trial court, if it determines attorneys' fees should be awarded to tenants under N.J.S.A. 46:8-21.1(c), must calculate the lodestar – a reasonable hourly rate for counsel's services multiplied by the number of hours reasonably expended, Walker v. Giuffre, 209 N.J. 124, 130-31 (2012) – based on its review of counsel's affidavit of services, R. 4:42-9(b), addressing the factors enumerated in RPC 1.5(a).

Affirmed in part; reversed and remanded in part for proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-6004-17T2