**Edna G. ACUNA, M.D., Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and Metropolitan Life Insurance Company, Defendants.**

**Civil Action No. 5–05–cv–22(DF).**

United States District Court,
E.D. Texas,
Texarkana Division.

May 28, 2008.

A. Paul Miller, Miller James Miller & Hornsby, Texarkana, TX, for Plaintiff.

Andrew Chesnut Whitaker, Figari & Davenport, Dallas, TX, for Defendants.

## *ORDER*

DAVID FOLSOM, District Judge.

Currently before the Court are Defendants' Motion for Summary Judgment Regarding Judicial Estoppel and Standing (Dkt. No. 71), Plaintiff's Response (Dkt. No. 76), and Defendants' Reply (Dkt. No. 77). The Court held a hearing on this matter on May 13, 2008. Having considered the arguments and briefing the Court finds that Defendants' Motion for Summary Judgment Regarding Judicial Estoppel and Standing (Dkt. No. 71) should be **GRANTED.**

## I. BACKGROUND

Connecticut General Life Insurance Company ("Connecticut General") issued Plaintiff, Dr. Edna G. Acuna ("Plaintiff"), a first disability income protection policy

("First Policy") on May 1, 1988 and a second disability income protection policy ("Second Policy") on October 1, 1988 (collectively "Policies"). Dkt. No. 43 at 1. Around December 1999, Metropolitan Life Insurance Company ("MetLife") became the reinsurer and claims administrator of certain policies issued by Lincoln Nation Life Insurance Company, which had previously become the reinsurer and claims administrator of certain Connecticut General policies. *Id.*

Plaintiff alleged that she became unable to perform her duties as an anesthesiologist due to complex ocular disease including frequent, repeated attacks of glaucomatocyclitic crisis. Dkt. No. 34 at 2. In July 2003, Plaintiff sought benefits under the Policies which were denied by MetLife on January 6, 2004. · Dkt. No. 71 at 3; Dkt. No. 71, Exh. 1 at 3–10. Plaintiff and MetLife subsequently communicated back and forth regarding this matter. Dkt. No. 71, Exh. 1 at 11–21. On September 15, 2004, Plaintiff sent a demand letter seeking $203,500.20 in damages plus $13,300 of monthly benefits through Plaintiff's 65th birthday. *Id.* at 22–23. Plaintiff stated that she would seek "all actual damages, including compensation for mental anguish, and for all expenses and fees to which [she was] entitled." *Id.* at 23. Plaintiff indicated that she would refrain from initiating a lawsuit for 60 days. *Id.* Plaintiff sent a follow-up letter on November 15, 2004. *Id.* at 24.

On November 24, 2004, Plaintiff and her husband, proceeding on a *pro se* basis, filed a joint Voluntary Petition in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, # 04–91377. Dkt. No. 71 at 2; Dkt. No. 71, Exh. 2 & 3. The Plaintiff did not disclose the Policies under Schedule B, "Personal Property," of the bankruptcy petition in either Question 9, "Interests in insurance policies," or Question 20, "Other contingent and unliquidated claims of every nature, including tax refunds counterclaims of the debtor, and rights to setoff claims." Dkt. No. 71, Exh. 2 at 12–13. Plaintiff's policies were also not listed under Schedule C, "Property Claimed as Exempt." *Id.* at 14.

On January 6, 2005 Plaintiff brought an action against Connecticut General and MetLife (collectively "Defendants") to recover benefits under two disability income protection policies issued by Connecticut General and administered by MetLife. Plaintiff's Original Petition, Dkt. No. 1, Exh. 1. This matter was originally filed in the District Court of Titus County, Texas but was removed to this Court by Defendants on February 3, 2005. Dkt. No. 1 at 1. On March 29, 2005, the Bankruptcy Court provided the Plaintiff and her husband with a discharge pursuant to Chapter 7 of the United States Bankruptcy Code. Dkt. No. 71, Exh. 2–1 at 8–9. On March 6, 2008, this Court ruled that this suit is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Dkt. No. 67.

Thereafter, the Court held a status conference on March 17, 2008. At the status conference Defendants raised the issue that the Plaintiff and her husband were in bankruptcy and indicated this would be an issue. *See* Dkt. No. 68. On March 25, 2008, Plaintiff's husband informed the Bankruptcy Court of the inadvertent omission and filed an amendment to Schedule B, listing this pending case as a claim under Question 20. Dkt. No. 76, Exh. 1 at 9. Plaintiff's husband valued the claim at "approximately $750,000" and listed the same claim as exempt under Schedule C. *Id.* at 11.

## II. LEGAL PRINCIPLES

In a motion for summary judgment, the moving party has the initial burden of

showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley*, 992 F.2d 540 (5th Cir.1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

■ At issue in this case is whether judicial estoppel bars the Plaintiff from pursuing her claims under ERISA because she failed to disclose the Policies and the lawsuit on the bankruptcy petition. The Fifth Circuit explains that "[j]udicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir.2004). The purpose of judicial estoppel is to protect the integrity of the judicial process, rather than the litigants.

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999). A three-part test has been devised, wherein a Court must find that (1) the party's position is "clearly inconsistent with the previous one;" (2) "the court must have accepted the previous position;" and (3) "the non-disclosure must not have been inadvertent." *Superior Crewboats*, 374 F.3d at 335.

## III. PARTIES' POSITIONS

■ Defendants argue that Plaintiff is judicially estopped from bringing this action because she failed to include this action in the Bankruptcy Petition. Dkt. No. 71 at 5. Defendants state that bankruptcy proceedings "permit the court, the trustee, and the creditors to evaluate the debtors' financial condition at the date of the bankruptcy and ascertain what assets may be available for distribution to creditors." *Id.* (quoting *Superior Crewboats*, 374 F.3d at 333; citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 179 (5th Cir. 1992); 11 U.S.C. § 521(a)(1)). Defendants aver that there is an ongoing, affirmative duty to disclose all assets, including contingent and unliquidated claims or those the debtor believes are worthless, through the pendency of the bankruptcy proceedings. *Id.* (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.2005); *Cleaver v. Cleaver*, 140 S.W.3d 771, 774 (Tex.App.-Tyler 2004, no pet.)). Defendants contend that Plaintiff is judicially estopped from her claim in this Court because she did not disclose the Policies under either Schedule B or Schedule C of the Bankruptcy Petition. *Id.* at 6.

Defendants discuss the three-part test for judicial estoppel and indicate that Plaintiff fulfills all three requirements. Defendants assert the first element is satisfied because Plaintiff took inconsistent positions by filing a Bankruptcy Petition

but failing to disclose the Policies or amend the petition after the filing of this action. Dkt. No. 71 at 7. Defendants argue the second element is satisfied because the Bankruptcy Court entered a discharge based on Plaintiff's disclosures. *Id.* Defendants contend the third element is satisfied because "it is not enough for [Plaintiff] to show that she was unaware of her duty to disclose her claims against Defendants; rather, she must show that, at the time she filed the Bankruptcy Petition, 'she was unaware of the facts giving rise to them.'" *Id.* at 7–8 (citing *Jethroe,* 412 F.3d at 601; *Estel v. Bigelow Mgmt., Inc.,* 323 B.R. 918, 922 (E.D.Tex.2005)). Defendants state that Plaintiff was aware at the filing of the Bankruptcy Petition that she was seeking a claim under the Policies. *Id.* at 8 (citing *Superior Crewboats,* 374 F.3d at 335; *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 785 (9th Cir. 2001)). Defendants also contend that Plaintiff had the motivation to conceal the claim because it would result in a windfall to recover the undisclosed claims. *Id.* (citing *Superior Crewboats,* 374 F.3d at 336).

Defendants provide that Plaintiff lacks standing because the Policies are the property of the Bankruptcy Court because all legal or equitable interest becomes property of the bankruptcy estate. Dkt. No. 71 at 8–9 (citing *Walden v. McGinnes (In re Walden),* 12 F.3d 445, 448 (5th Cir.1994); 11 U.S.C. § 541). Defendants concede that, under the Bankruptcy Code and Texas law, disability benefits are potentially exempt from the bankruptcy estate. *Id.* at 10 (citing 11 U.S.C. § 522(d)(10)(C); Tex. Ins.Code § 1108.051(b)(2)). However, Defendants state that a debtor must still disclose assets that may be exempted in order to allow interested parties with an opportunity to object. *Id.* (citing *Walden,* 12 F.3d at 448; *In re Monahan,* 171 B.R. 710, 717 (Bankr.N.H.1994); *In re Hall,* 169 B.R. 732, 734 (Bankr.N.D.Okla.1994)). As such, Defendants argue that a potentially

exempt property that was knowingly concealed becomes a part of the bankruptcy estate. *Id.* (citing *Mindlin v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 160 B.R. 508, 514 (S.D.N.Y.1993); *Sheehan v. Lincoln Nat'l Life,* 257 B.R. 449, 453 (N.D.W.Va.2001); *In re Park,* 246 B.R. 837, 840 (Bankr.E.D.Tex.2000); *In re Pomar,* 234 B.R. 135, 136 (Bankr.M.D.Fla. 1993)). Defendants further argue that judicial estoppel should apply even though Plaintiff filed an amendment and even if Plaintiff's discharge is subsequently vacated. *Id.* at 11–12 (citing *Superior Crewboats,* 374 F.3d at 336; *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir.2002); *Estel,* 323 B.R. at 923; *In re Park,* 246 B.R. at 844; *Hamilton,* 270 F.3d at 784).

Plaintiff responds that judicial estoppel only applies when there is "cold manipulation and not to an unthinking or confused blunder." Dkt. No. 76 at 3 (citing *Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973); *Matter of Cassidy,* 892 F.2d 637, 642 (7th Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990)). Plaintiff argues that judicial estoppel requires that there is a motive of concealment as well as evidence that the disclosure would have led to a different result. *Id.* (citing *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 363 (3d Cir.1996)). Plaintiff states that she and her husband filed the bankruptcy *pro se* and that the omission was a "clerical error." *Id.* at 4. Plaintiff avers that it had no motive to conceal this claim because it would have been exempt under bankruptcy law and, unlike *Superior Crewboats,* there would be no windfall or gain by the inadvertent nondisclosure. *Id.* at 4–5.

Plaintiff states that she has standing because her exempt claims are now prop-

erly listed and should not be under control of the bankruptcy trustee. Dkt. No. 76 at 5. Plaintiff contends that Defendants are seeking a windfall by having to avoid its contractual obligation to pay the disability income benefits. *Id.* Plaintiff states that she is supported by the clean hands doctrine and points out "the dramatic irony of Defendants' assertions of equitable relief under these facts." *Id.* at 5–6 (citing *In re Canion,* 196 F.3d 579 (5th Cir.1999)). Plaintiff states that she was not in bankruptcy until her glaucomatocyclitic crisis forced her to stop working. *Id.* Plaintiff contends that had Defendants honored the Policies, Plaintiff would not have needed to file for bankruptcy in November 2004. *Id.* at 6. Plaintiff argues that "Defendants' wrongful denial of Plaintiff's claim led to the filing of the bankruptcy which, ironically, Defendants now rely upon as the basis for claimed equitable relief to be freed from their obligation to pay benefits for which they have received fifteen years' worth of premiums." *Id.*

Defendants reply that Plaintiff does not controvert the Fifth Circuit cases cited by Defendants, rather, the Plaintiff relied on cases outside the Fifth Circuit that "are neither binding nor persuasive." Dkt. No. 77 at 2. Defendants contend that the amended disclosure is too late because the Plaintiff was able to "avoid over $200,000 in indebtedness yet retain most (if not all) of their assets (through the extensive exemptions that they claimed), and they submitted their 'amended' disclosures only after Defendants filed the Motion." *Id.* at 3. Defendants note that Plaintiff's husband's affidavit stating that the Policies were not included because they were exempt and he simply forgot to include them contradicts all the exemptions that Plaintiff's husband did claim. *Id.* at 4. Defendants cite Plaintiff's repeated claims that her bankruptcy filing was a result of the denial of her claims as establishing that the Policies should have been included in the Bank-

ruptcy Petition. *Id.* at 5 (citing *Ryan,* 81 F.3d at 363).

Defendants state that they do not have unclean hands. Dkt. No. 77 at 9. Defendants emphasize that judicial estoppel is meant to protect the judicial system, and not the litigants. *Id.* (citing *Superior Crewboats,* 374 F.3d at 334). Defendants argue that Plaintiff's suggestion "that the denial of her claim compelled her to file bankruptcy is not only false, but it also confirms the [Plaintiff's] actual awareness, at the time they filed the Bankruptcy Petition, of the Policies and her claims thereunder." *Id.* (noting that with Assets of $1,004,177, the Acunas "could have paid off all their liabilities" of $214,561).

## IV. DISCUSSION

As explained above, the Fifth Circuit articulated three requirements before judicial estoppel applies:

> (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.

*Superior Crewboats,* 374 F.3d at 335.

Although Plaintiff only contests the "motive" component to the third requirement, the Court discusses each requirement in turn.

### A. Clearly Inconsistent Positions

*Superior Crewboats* is particularly instructive on the application of the first two factors. As explained in *Superior Crewboats,* the "Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *Superior Crewboats,* 374 F.3d at 335 (emphasis in original) (quoting *Coastal Plains,* 179 F.3d at 207–08). Here, the omission of Plaintiff's Policies in

its Bankruptcy Petition "is tantamount to a representation that no such claim existed." *Id.*; *see also Estel*, 323 B.R. at 922. Plaintiff did not advise the Bankruptcy Court of either of its policies under Schedule B, "Personal Property," or Schedule C, "Exemptions," which Plaintiff corrected only after Defendants filed this motion. As the Fifth Circuit noted, "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry."

### B. Whether Court Adopted Plaintiff's Position

Here, the Bankruptcy Court adopted Plaintiff's position that there was no claim or suit. The Bankruptcy Court issued a discharge under section 727 of title 11 of the United States Bankruptcy Code on March 29, 2005. Dkt. No. 71, Exh. 2–1 at 8–9. The Bankruptcy Court adopted the Plaintiff's position by issuing its discharge. *See Superior Crewboats*, 374 F.3d at 335; *Estel*, 323 B.R. at 922.

### C. Whether Non–Disclosure Was Inadvertent

■ Under this requirement, "a failure to satisfy a statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Superior Crewboats*, 374 F.3d at 335 (emphasis in original) (quoting *Coastal Plains*, 179 F.3d at 210). Plaintiff's primary argument regarding this requirement is that there was no motive for concealment. Plaintiff relies on the Third Circuit decision of *Ryan* which stated that asserting an inconsistent prior position does not trigger judicial estoppel "when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court." *Ryan*, 81 F.3d at 362 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980)). Plaintiff also cites to *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164, 175 (5th Cir.1973), which states that under Texas law, judicial estoppel "looks toward cold manipulation and not an unthinking or confused blunder." Dkt. No. 76 at 3.

Of course, both of these cases were also cited and considered by the Fifth Circuit in *Coastal Plains*, 179 F.3d at 207. In *Coastal Plains*, the Fifth Circuit evaluated two cases from the Third Circuit which "aptly illustrate the critical distinction between nondisclosures based on a lack of knowledge, and those where, as here, the debtor fails to satisfy its disclosure duty despite knowledge of the undisclosed facts." *Coastal Plains*, 179 F.3d at 211. One case was *Ryan*, which Plaintiff in this case relies on, and the other case was *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988) which found that judicial estoppel applied. As explained by the Fifth Circuit:

> The [*Ryan* court] stated that the *Oneida* debtor had knowledge of its claim when it filed for bankruptcy because the "gravamen of [its] case against the bank was that the bank's actions were responsible for forcing [the debtor] into bankruptcy"; and noted that the *Oneida* debtor had a motive to conceal the claim because, had the bank known that the debtor would seek restitution of the amount paid to the bank under the plan, the bank "might well have voted against approval of the plan." The *Ryan* court concluded that, in *Oneida*, it was "this combination of knowledge of the claim and motive for concealment in the face of an affirmative duty to disclose [that] gave rise to an inference of intent sufficient to satisfy the [bad faith] requirements of judicial estoppel."

*Coastal Plains*, 179 F.3d at 211 (citations omitted).

On the other hand, in *Ryan*, the court noted that there was no evidence that non-

disclosure played any role in the confirmation or that disclosure would have led to a different result. *Ryan,* 81 F.3d at 363. However, the result in *Superior Crewboats* did not require such a strong inference of intent. The party in *Superior Crewboats* had actually disclosed the lawsuit in the bankruptcy proceeding but "inaccurately informed the bankruptcy trustee that the claim was barred by Louisiana's one-year prescriptive period." *Superior Crewboats,* 374 F.3d at 333 n. 1. The Fifth Circuit determined that the party had knowledge of the claim and the party was "aware of the facts underlying the claim and their continuing obligation to disclose its existence to the court." *Id.* at 335. The Fifth Circuit stated that the party had the motivation to conceal the claim because it would receive a windfall by not having to disclose the claims. *Id.* at 336. The Fifth Circuit also refused to allow the party to amend and re-open the bankruptcy proceeding to amend their petition. *Id.* In addition, other district courts in the Third Circuit have interpreted *Ryan* to find that "[a]lthough the intent to mislead cannot be inferred from the mere fact of nondisclosure, courts are permitted to draw a rebuttable inference of bad faith 'when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.'" *Ortlieb v. Hudson Bank,* 312 F.Supp.2d 705, (E.D.Pa. 2004) (citations omitted) (quoting *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.,* 337 F.3d 314, 321 (3d Cir.2003)).

Here, the facts of this case certainly demonstrate both knowledge of the claim and a motive to conceal. Plaintiff was clearly aware of the claim and the likelihood that the claim would result in a lawsuit. From MetLife's denial of benefits in January 6, 2004 to September 15, 2004, when Plaintiff sent a demand letter, the Plaintiff had been communicating with the Defendants. Plaintiff also sent a follow-up letter on November 15, 2004, threatening a lawsuit less than two weeks before filing its Bankruptcy Petition on November 24, 2004. Not once throughout the entire proceedings did Plaintiff attempt to amend the schedule to include the Policies. Though Plaintiff argues that its claim would have been exempt, Plaintiff also threatened to bring a lawsuit for its extra-contractual claims (e.g. attorneys' fees and costs and mental anguish) which would not have been exempt when she filed her bankruptcy. Thus, long before the Court's ruling on March 6, 2008 that this plan was governed under ERISA (Dkt. No. 67), the Plaintiff had non-exempt claims that she did not disclose.

After the discharge was granted by the Bankruptcy Court, the trustee of the estate proceeded with a complaint to set aside fraudulent transfer of real estate property in April 4, 2005. Dkt. No. 71, Exh. 2–1 at 13–15. Even at this time, the Plaintiff failed to take the initiative to amend her petition. The Plaintiff only filed her amendment with the Bankruptcy Court after Defendants' motion was filed. As cited by both the Third Circuit and the Fifth Circuit:

> Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir.2002); *Superior Crewboats,* 374 F.3d at 336; *Krystal,* 337 F.3d at 321.

■ As explained in *Jethroe*, "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe*, 412 F.3d at 600. The gravamen of Plaintiff's case results from the same policies which forced the Plaintiff into bankruptcy when the benefits were denied. *See Ryan*, 81 F.3d at 363. Plaintiff has repeatedly asserted that the filing of the bankruptcy was a direct result of the denial of the claim benefits. Dkt. No. 76 at 5–6. Plaintiff had a motive to conceal this claim because it would result in the windfall that the Fifth Circuit sought to prevent. *See Superior Crewboats*, 374 F.3d at 336. Here, the Plaintiff clearly knew how to claim exemptions and was even caught attempting to fraudulently convey real estate property. The bankruptcy proceedings have resulted in a discharge for Plaintiff and her husband, while allowing her to pursue her claims in this court. This is the kind of activity that judicial estoppel was designed to prevent.

### D. Standing

Plaintiff argues that, like *Ryan*, the non-disclosure is irrelevant because the policies would have been exempt. However, the Fifth Circuit has explained in *In re McLain*, that property that is exempt is initially regarded as estate property until it is found to be exempt by the bankruptcy court. *In re McLain*, 516 F.3d 301, 315 (5th Cir.2008). The Fifth Circuit refused to apply a retroactive exemption, holding that "a debtor should not be permitted to conceal property from the bankruptcy court on the theory that it is exempted property only to claim a retroactive exemption if the deception is later discovered." *Id.* As explained in *Estel*, "a prepetition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Estel*, 323 B.R. at 924 (citing *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir.2004)). Thus, even if the Court were to find that Plaintiff did not have the motive to conceal, with the amendment pending before the Bankruptcy Court which has yet to find the property exempt, the "proper party to have brought the suit would have been the trustee unless the trustee elected not to pursue the claim for the creditors." *Id.*

### V. CONCLUSION

The Court finds that judicial estoppel applies. As explained above, the doctrine of judicial estoppel is meant to protect the judicial system, not the litigants, and thus Plaintiff's argument regarding the clean hands doctrine is inapposite. The Court reminds the Plaintiff that the harshness of the result is counterbalanced by the emphasis that the Fifth Circuit places on the "importance of full disclosure in bankruptcy proceedings." *In re McLain*, 516 F.3d at 315; *see Coastal Plains*, 179 F.3d at 207–08.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment Regarding Judicial Estoppel and Standing (Dkt. No. 71).